*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* APPLICATION OF CONSUMERS ENERGY COMPANY TO INCREASE RATES.

---

RESIDENTIAL CUSTOMER GROUP,

        Appellant,

v

MICHIGAN PUBLIC SERVICE COMMISSION,

        Appellee,

and

CONSUMERS ENERGY COMPANY,

        Petitioner-Appellee.

UNPUBLISHED
December 28, 2023

No. 356793
Public Service Commission
LC No. 00-020697

---

Before: M. J. KELLY, P.J., and CAMERON and HOOD, JJ.

PER CURIAM.

Intervenor Residential Customer Group (RCG) appeals as of right the Michigan Public Service Commission (PSC) order granting petitioner, Consumers Energy Company (Consumers Energy), authority to increase electric rates. RCG challenges the PSC's approval of a projected test year that was forward looking, consisting of 12 consecutive months in the future, for the purpose of determining electric rates. It argues that the test year (and that any such test year) is unlawful and unreasonable. We have rejected similar arguments raised by RCG in other cases, including *In re Application of Consumers Energy Co to Increase Rates*, 338 Mich App 239; 979 NW2d 702 (2021). We therefore disagree and affirm PSC's order.

## I. BACKGROUND

-1-

This case started with Consumer Energy's February 2020 application before the PSC seeking to increase its electric rates by $244 million. When proposing its rate increase, Consumers Energy used a 12-month period ending on December 31, 2021 (in other words, the 12 consecutive months of calendar year 2021), as the projected test year.

For the purposes of this appeal, the facts relating to the increase in electric rates are irrelevant; rather, the critical facts relate to the methodology for the proposed rate increase. Relevant to the contested methodology, Consumers Energy filed with its application written testimony of Heidi J. Myers, Consumers Energy's Director of Revenue Requirements and Analysis. According to Myers's written testimony, although Consumers Energy proposed using the 2021 calendar year as the projected test year in this case, it also looked at "the 2018 calendar year as the historical year because it is the most recent historical calendar period with final regulatory financial statements that could be used for the filing." There was no revenue deficiency for the 2018 historical year. Rather, Myers, "calculated a historical year jurisdictional electric revenue sufficiency for the 12-month period [that] ended December 31, 2018[,] of $21,835,000." Myers written testimony also indicated that Consumers Energy "selected the 12 months ending December 31, 2021[,] as the projected test year in this proceeding." Financial analysis of the projected test year of 2021 indicated a revenue deficiency of $244,357,000.

Following Consumers Energy's application, in March 2020, RCG, a nonprofit corporation and group association comprised of residential electric customers of Consumers Energy, moved to intervene. Without opposition, the administrative law judge (ALJ) granted RCG intervenor status, along with several other organizations not part of this appeal.

Over multiple days from late July 2020 to August 2020, the ALJ held an evidentiary hearing. During the hearing, the parties had an opportunity to cross-examine witnesses who provided direct examination testimony in written form, a common process in PSC cases. Again, the substantive testimony and discussion at the evidentiary hearing is not critical to this appeal. Notably, no party presented testimony countering Consumers Energy's use of the 2018 calendar year as the historical period or contesting its use of the 2021 calendar year as the projected test year.

Following the hearing, RCG filed its initial brief in the PSC. As on appeal, it characterized the projected test year as lasting 22 months because the test year ended on December 31, 2021, approximately 22 months after Consumers Energy filed its application in February 2020. RCG argued that the 2018 historical period should be used to determine rates or that, if a projected test year was to be used, it must be "anchored" or begin either at the end of the historical year, i.e., December 31, 2018, or on the date of the filing of the application to increase rates, i.e., February 27, 2020. RCG argued that such an "anchoring" requirement for a projected test year would harmonize MCL 460.6a(1) with other timing requirements in utility rate cases (as will be discussed in more detail later). It further argued that using a projected test year too far in the future would fail to comply with the principle that a utility's rate base must consist of capital invested in plants that are "used and useful" or that investments or other costs must be reasonably and prudently incurred. Noting that there was a revenue sufficiency or excess for the 2018 historical year, RCG asserted that using the 2021 projected test year to raise rates would result in unreasonable and unjust rates. It did not present any testimony or evidence to support its argument or counter the evidence presented by Consumers Energy at the evidentiary hearing.

Consumers Energy responded arguing that RCG's proposal to use the 2018 historical period would not result in just and reasonable rates because Consumers Energy was undertaking significant investments in its electric system. It contended that use of the 2021 projected test year better reflected business conditions during the period when the rates were expected to take effect. It further argued that RCG failed to present any testimony or evidence to support its proposal to use the 2018 historical period to establish rates. Although Consumers Energy had presented information regarding the 2018 historical period, this was done in order to comply with the PSC's filing requirements; Consumers Energy did not offer the 2018 historical information for the purpose of setting rates.

The ALJ issued her proposal for decision, which among other recommendations, proposed accepting Consumers Energy's test year. It noted that Consumers Energy had used the 2021 calendar year as the projected test year and that no party had presented testimony supporting an alternative test year. It rejected RCG's argument in its initial brief that rates should be based on the 2018 historical year and that a projected test year consisting of a future consecutive 12-month period as referenced in MCL 460.6a(1) must be anchored by the end of the historical period or the date that the application was filed, stating:

> Based on a review of the arguments of the parties and the [PSC's] decisions in recent rate cases, which rejected the use of an historical test period raised for the first time in briefs and lacking supporting evidence, the ALJ finds that RCG's request should be rejected, and the projected test year ending December 31, 2021, should be used in this case.

It nonetheless observed the benefits of the "used and useful" principle, considering that ratepayers are asked "to prepay a return of and on assets that may not be used in the provision of utility service for a year (or more, in the case of a project that has a multi-year timeline from the beginning to competition) . . . ." The ALJ further stated that there was no legal requirement that items be used and useful to be included in the rate base, the "used and useful" principle has been employed to protect ratepayers from unreasonable and excessive costs, and the principle was consistent with MCL 460.6a(1), which allowed a utility company to base its request for increased rates on projected revenues and costs. Finally, the ALJ stated that "concerns regarding the reliability of the company's projections are considered in the context of specific challenges to the company's presentations."

In December 2020, following RCG's exceptions to the ALJ's recommendation and Consumer Energy's response, the PSC issued an order adopting the 2021 projected test year and authorizing Consumers Energy to implement rates that increased its annual electric revenues by $90,220,000. This was a significant reduction from Consumers Energy's requested authority to increase its rates by $244 million. (The bases for the PSC's reduction of the amount of the increase from the requested amount are not relevant to this appeal.) After noting that it had rejected RCG's test-year arguments in earlier cases, the PSC explained:

> MCL 460.6a(1) provides that "[a] utility may use projected costs and revenues for a future consecutive 12-month period in developing its requested rates and charges." The test year may be in the future, and the 12 months must be consecutive; those are the requirements of the statute. The burden is on the utility

to prove the accuracy of each and every test year projection. The [PSC] approves the proposed test year of January 1, 2021 through December 31, 2021.

The PSC later denied RCG's petition for rehearing. This appeal followed.

## II. STANDARD OF REVIEW

"A final order of the PSC must be authorized by law and be supported by competent, material, and substantial evidence on the whole record." *In re Application of Consumers Energy Co to Increase Rates*, 338 Mich App 239, 242; 979 NW2d 702 (2021) ("*In re Consumers Energy*"), citing Const 1963, art 6, § 28. An aggrieved party must "show by clear and satisfactory evidence that the order of the [PSC] complained of is unlawful or unreasonable." MCL 462.26(8).

> To establish that a PSC order is unlawful, the appellant must show that the PSC failed to follow a statutory requirement or abused its discretion in the exercise of its judgment. A reviewing court gives due deference to the PSC's administrative expertise and is not to substitute its judgment for that of the PSC. [*In re Consumers Energy*, 338 Mich App at 242 (citations omitted).]

"Issues of statutory interpretation are reviewed de novo." *Id*. at 243, citing *In re Complaint of Rovas*, 482 Mich 90, 102; 754 NW2d 259 (2008). "A reviewing court should give respectful consideration to an administrative agency's interpretation of statutes it is obliged to execute, but not deference." *In re Consumers Energy*, 338 Mich App at 243, citing *In re Complaint of Rovas*, 482 Mich at 108.

## III. LAW AND ANALYSIS

The question in this case is whether the PSC's order using the projected test year of 2021 to set rates was unlawful or unreasonable. RCG, though focusing on its purported unlawfulness, argues that it was both unlawful and unreasonable. We disagree. RCG's arguments are a rehash of arguments that this Court previously rejected in *In re Consumers Energy*, 338 Mich App at 239.

### A. PROJECTED TEST YEAR AS A VALID METHODOLOGY UNDER MCL 460.6a(1)

At the threshold, RCG does not take issue with specific facts underlying the PSC's order; rather, as stated, it argues that by accepting the 12-month forward-looking methodology, PSC's order necessarily was unreasonable and unlawful. This legal argument—which at times borders on a policy argument—requires us to analyze the statute at issue, MCL 460.6a, and our recent precedents addressing the same, or very similar, arguments about this methodology.

MCL 460.6a(1) provides, in relevant part, that "[a] utility may use projected costs and revenues for a future consecutive 12-month period in developing its requested rates and charges." This Court has determined that the language of MCL 460.6a(1) authorizes the use of a projected test year, consisting of a future consecutive 12-month period, to set rates. See *In re Consumers Energy*, 338 Mich App at 239. As in *In re Consumers* Energy, see *id.* at 243, here, Consumers Energy described a "test year" as a device the utility uses "to determine representative levels of revenues, expenses, rate base, and capital structure for use in the rate-setting formula, which, conceptually, can be historical, projected, or some combination of historical and projected."

In *In re Consumers Energy*, this Court rejected RCG's argument that the PSC had erred by adopting a projected test year extending more than 12 months after the date that the application to raise rates was filed. *In re Consumers Energy*, 338 Mich App at 241-246. On November 30, 2018, Consumers Energy filed an application to raise its natural gas rates. *Id*. at 241. Consumers Energy used a 12-month projected test year running from October 1, 2019 through September 30, 2020, and looked at financial information from the historical year ending December 31, 2017. *Id*. at 241-242. RCG argued that the historical year alone should be used and that a projected test year may begin no later than the date that the application to raise rates was filed. *Id*. at 244-246. RCG also asserted that the projected test year extending 22 months after the date that the rate case was filed included speculative forecasts of future investments and costs. *Id*. at 243, 245. The PSC rejected RCG's arguments and adopted Consumers Energy's projected test year ending on September 30, 2020. *Id*. at 244.

On appeal, RCG renewed its challenge to the projected test year "on the basis of its interpretation of MCL 460.6a(1)" as well as "policy arguments against reliance on projections extending more than a year beyond the initiation of the rate case . . . ." *In re Consumers Energy*, 338 Mich App at 245.

> However, RCG challenges the evidentiary basis for the chosen test year only by complaining generally that, because it extends 22 months beyond the date on which the rate case was filed, it has resulted in speculative and exaggerated forecasts concerning [Consumers Energy's] future costs and investments. RCG does not specifically identify or explain what estimates are flawed, nor does it offer any alternative calculations. [*Id*.]

This Court agreed

> with the PSC, Consumers [Energy], and also the panel of this Court that issued the unpublished decision in *In re Application of DTE Electric Co to Increase Rates*, unpublished per curiam opinion of the Court of Appeals, issued February 25, 2021 (Docket Nos. 349924 and 350008) [("*In re DTE I*")[1]], that the statute's authorization of the use of "a future consecutive 12-month period" limits the future period only in that it must consist of 12 consecutive, or contiguous, months, and thus does not imply that it must begin no later than the filing date of the attendant rate case. [*Id*. (footnote added).]

This Court rejected RCG's argument that MCL 460.6a(1) should be read in a manner to harmonize it with related statutory provisions. *In re Consumers Energy*, 338 Mich App at 245-246. This Court explained:

> RCG points out that MCL 460.6a(5) sets forth a rule by which rate requests are approved by default when the PSC fails to issue a final order within 10 months after

---

[1] Though not binding, unpublished decisions of this Court may be considered instructive or persuasive. *Centria Home Rehab, LLC v Philadelphia Indemnity Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 359371); slip op at 8.

the utility's rate filing. Likewise, MCL 460.6a(6) prohibits the filing of a new rate case "earlier than 12 months after the date of the filing of a complete prior general rate case application." RCG argues that the running of these provisions' timing specifications from the filing date should also apply to MCL 460.6a(1), and further points out that such operation would align the prospective test year of Subsection (1) with the 12-month cycle envisioned by Subsection (6). We are of the opinion that, although such alignment might have empirical appeal, had the Legislature desired that outcome it would have clearly called for it. [*Id*. at 246.]

This Court further noted that MCL 460.6a(5)

starts the 10-month decision period anew in the event that the utility either significantly amends its filing or requests its own timing extension, and Subsection (6) alternatively states that "[a] utility may not file a new general rate case application until the commission has issued a final order on a prior general rate case or until the rates are approved under subsection (5)." These provisions permit continuing the proceedings beyond the 12 months commencing with the filing date and indicate that the running of timing limitations from the filing date is not so seriously ensconced as to militate in favor of projecting such a specification into Subsection (1). This is particularly true in light of the lack of any expressed limitations in MCL 460.6a(1) on how far in the future a projected test year may run. The Legislature's decision not to speak on the issue reflects its understanding that the PSC would reject a test year set so far removed from circumstances actually in view as to render it less than workable or that, should the PSC adopt such a flawed test year, it would be subject to appellate challenges for unreasonableness. [*In re Consumers Energy*, 338 Mich App at 246-247.]

This Court thus rejected RCG's challenge to the projected test year in that case. *Id*. at 247.

Notably, RCG has raised the same or similar arguments in cases that both preceded and followed this Court's decision in *In re Consumers Energy*. See, e.g., *In re DTE I*, unpub op at 10-12; *In re Application of DTE Electric Co to Increase Rates*, unpublished per curiam opinion of the Court of Appeals, issued December 21, 2021 (Docket No. 353767), pp 4-7 ("*In re DTE II*"). This Court has consistently rejected the argument that RCG raises here. See *In re DTE I*, unpub op at 10-12; *In re DTE II*, unpub op at 4-7.

In *In re Consumers Energy*, this Court cited favorably *In re DTE I*, an earlier unpublished opinion addressing almost the exact same issues and arguments. See *In re Consumers Energy*, 338 Mich App at 245-246 (citing approvingly *In re DTE I*). In *In re DTE I*, this Court rejected RCG's argument that the PSC had erred by allowing DTE Electric Company (DTE) to designate a projected test year that extended more than 12 months after the date that DTE filed its application to raise rates. *In re DTE I*, unpub op at 10-12. There, DTE used a projected test year that ran from May 1, 2019 through April 30, 2020. *Id*. at 11. DTE also looked at the historical year consisting of the 12 months ending on December 31, 2017. *Id*. RCG argued that MCL 460.6a(1) did not permit test years set more than 12 months into the past or more than 12 months into the future, as measured from the date on which the application to raise rates was filed. *Id*. This Court stated that the statutory language authorized the use of test years consisting of consecutive 12-month

periods. *Id.* "Nowhere in the statute is any express or implied constraint upon *when* that 12-month period must be set." *Id.* (emphasis in original). Since *In re Consumers Energy*, 338 Mich App at 239, this Court has continued to reject this argument in its various permutations. See *In re DTE II*, unpub op at 4-7.

Here, RCG makes essentially the same arguments that this Court previously has rejected. As in prior cases, RCG argues that the projected test year must be "anchored" to either the end of the historical year or the date of the filing of the rate application. In other words, RCG argues that the projected test year must begin no later than the date of the filing of the rate application. But as this Court has explained repeatedly in the multiple prior appeals brought by RCG, there is no such requirement in the language of MCL 460.6a(1). See *In re Consumers Energy*, 338 Mich App at 244-246; *In re DTE I*, unpub op at 11; *In re DTE II*, unpub op at 6.

Similarly, this Court has previously rejected RCG's argument that reading MCL 460.6a(1) *in pari materia* with timing specifications in related statutory provisions imposes a time constraint on the projected test years. See *In re Consumers Energy*, 338 Mich App at 246-247; *In re DTE I*, unpub op at 11-12. In addition to the timing provisions addressed in the earlier cases, RCG cites other statutory provisions that RCG vaguely asserts provide "statutory guidance applicable to ratemaking." RCG cites MCL 460.557(2)[2] and (4)[3] and MCL 460.54.[4] RCG's argument that we should interpret the language of MCL 460.6a(1) by referencing another statutory provision is unpersuasive because there is no ambiguity in the relevant language of MCL 460.6a(1), and we can discern the legislative intent from the plain terms within that provision. See *Grand Rapids v Brookstone Capital, LLC*, 334 Mich App 452, 460; 965 NW2d 232 (2020) ("[T]he *in pari materia* doctrine is a rule of statutory construction that is not implicated if the language of the statute is unambiguous and the legislative intent is clearly expressed.").

Although RCG couches these arguments in the language of statutory analysis, they are essentially policy-based arguments in support of its proposed "anchoring" requirement, including

---

[2] RCG quotes the following language from MCL 460.557(2):

> In determining the price, the commission shall consider and give due weight to all lawful elements necessary to determine the price to be fixed for supplying electricity, including cost, reasonable return on the fair value of all property used in the service, depreciation, obsolescence, risks of business, value of service to the consumer, the connected load, the hours of the day when used, and the quantity used each month.

[3] RCG quotes language from MCL 460.557(4) stating that "[t]he rates of an electric utility shall be just and reasonable . . . ."

[4] RCG quotes language from MCL 460.54 stating that

> the commission shall thereupon be empowered, and it shall be its duty to make full investigation as to all matters so submitted and to fix and establish such reasonable maximum rates and charges, and prescribe such rules and conditions of service and make such determination and order relative thereto as shall be just and reasonable.

that a utility company should not be permitted to self-select any future consecutive 12-month period and that the use of a projected test year that is set too far in the future would require speculation regarding costs and investments. Whether RCG proposes good or bad policy changes is immaterial because the terms of the statute are unambiguous. "Courts must respect legislative decisions and interpret statutes according to their plain language." *In re Complaint of Rovas*, 482 Mich at 93. The language of MCL 460.6a(1) does not effectuate RCG's preferred imposition of a timing constraint regarding when the projected test year begins. The statutory authorization of a projected test year "limits the future period only in that it must consist of 12 consecutive, or contiguous, months and thus does not imply that it must begin no later than the filing date of the attendant rate case." *In re Consumers Energy*, 338 Mich App at 246.

Still, we acknowledge that if a utility company were to propose a projected test year set so far in the future that it is less than workable, it would be subject to rejection by the PSC or, if approved by the PSC, subject to appellate challenges for unreasonableness. See *In re Consumers Energy*, 338 Mich App at 247. And the PSC in this case properly recognized that Consumers Energy bore the burden of proving "the accuracy of each and every test year projection." Put simply, a utility company seeking to raise its rates must rely on projections that are reliable and substantiated. Here, RCG challenged only the methodology, not the details of Consumers Energy's financial analysis. RCG therefore has failed to show that there is any evidence supporting its concerns. See *In re DTE I*, unpub op at 11 (noting the lack of any practical foundation for RCG's concerns).

RCG further argues that, by approving the projected test year, the PSC has abrogated its duty to set just and reasonable rates. RCG's argument lacks merit. MCL 460.557(4) provides, in relevant part, "The rates of an electric utility shall be just and reasonable and a consumer shall not be charged more or less than other consumers are charged for like contemporaneous service rendered under similar circumstances and conditions." As noted, MCL 460.6a(1) authorizes the use of a projected test year consisting of a future period of 12 consecutive months and does not require the projected test year to begin on or before the date of the filing of the rate application. *In re Consumers Energy*, 338 Mich App at 246-247. Here, the PSC properly recognized that Consumers Energy bore the burden of proving "the accuracy of each and every test year projection."[5] We again emphasize that a projected test year set so far in the future that it is less than workable would be subject to rejection by the PSC or, if approved by the PSC, subject to appellate challenges for unreasonableness. *Id*. at 247. RCG has not shown that the statutorily-authorized use of a projected test year prevented the setting of just and reasonable rates.

## B. PROJECTED TEST YEAR WAS NOT UNLAWFUL

Mapping these principles and precedent onto the facts of this case, we must conclude that RCG has failed to establish a basis for appellate relief. RCG has the burden of showing "by clear and satisfactory evidence that the order of the [PSC] complained of is unlawful or unreasonable."

---

[5] We observe that the PSC approved a $90.2 million rate increase in the face of a requested $244 million rate increase, thus undermining RCG's contention that the PSC acted as a "rubber stamp" in this case.

MCL 462.26(8). "To establish that a PSC order is unlawful, the appellant must show that the PSC failed to follow a statutory requirement or abused its discretion in the exercise of its judgment." *In re Consumers Energy*, 338 Mich App at 242. Also, a PSC decision "is unlawful if it involves an erroneous interpretation or application of the law . . . ." *Detroit Edison Co v Mich Pub Serv Comm*, 261 Mich App 448, 451-452; 683 NW2d 679 (2004).

RCG argues that the PSC's order is unlawful because it extends 22 months after the filing of the rate application and contravenes the plain language of MCL 460.6a(1). RCG's argument is thus premised on its proposed interpretation of MCL 460.6a(1). But RCG's proposed interpretation of MCL 460.6a(1) is inconsistent with the statutory language, as this Court has explained in prior appeals brought by RCG, including in *In re Consumers Energy*, 338 Mich App at 246-247. RCG has not shown that the PSC failed to follow a statutory requirement or abused its discretion in the exercise of its judgment. Nor has RCG demonstrated that the PSC's decision involves an erroneous interpretation or application of law. RCG has therefore failed to establish that the PSC's authorization of the projected test year was unlawful.

## C. PROJECTED TEST YEAR WAS NOT UNREASONABLE

RCG also has not demonstrated that the PSC's order was unreasonable. An order of the PSC "is unreasonable if it is not supported by the evidence." *Detroit Edison Co*, 261 Mich App at 451-452. The PSC's findings of fact are entitled to deference. *In re Complaint of Rovas*, 482 Mich at 101.

RCG argues that the projected test year approved by the PSC is unreasonable and "overly extended" because it ends 22 months after the filing of the rate application. It also asserts that unjust and unreasonable rates have resulted from speculative projections of future costs and investments. But its claims lack specificity and are not tailored to the application for rates increases underlying this appeal. Beyond making generalized assertions, RCG has failed to identify any specific projections that lack adequate substantiation or to suggest any alternative calculations. The present case is thus similar in this respect to *In re Consumers Energy*, in which this Court noted that

> RCG challenges the evidentiary basis for the chosen test year only by complaining generally that, because it extends 22 months beyond the date on which the rate case was filed, it has resulted in speculative and exaggerated forecasts concerning [Consumers Energy's] future costs and investments. RCG does not specifically identify or explain what estimates are flawed, nor does it offer any alternative calculations. [*In re Consumers Energy*, 338 Mich App at 245.]

As stated, the PSC in this case properly recognized that Consumers Energy bore the burden of proving "the accuracy of each and every test year projection." The PSC approved the projected test year. RCG offers only conclusory assertions that Consumers Energy's projections were speculative. RCG has therefore failed to show that the PSC's decision was unreasonable.

Further, to the extent that RCG alternatively argues that the PSC should have used the historical year of 2018 rather than the projected test year of 2021 to set rates, we are not persuaded. RCG presented no evidence to support this position. RCG argues that Myers's testimony would

have supported the use of the 2018 historical year. However, although Myers provided information regarding the 2018 historical year, she testified in support of the use of the projected test year of 2021 to set rates. RCG's argument on this point thus fails to establish that the PSC's decision to use the 2021 projected test year was unreasonable.

We affirm.

/s/ Michael J. Kelly
/s/ Thomas C. Cameron
/s/ Noah P. Hood